Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

Nos. Civ. 96–2123 RCL, Civ. 97–1288 RCL.

United States District Court,
District of Columbia.

Dec. 23, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiffs.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Robert Muze, Stein, Mitchell & Mezines, Washington, DC, for defendant Anthony Marceca.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on Plaintiffs' Motion to Compel Re–Designation of Witness Concerning "WHODB" Under Fed.R.Civ.P. 30(b)(6) and for Attorneys' Fees and Costs. Upon consideration of this motion, defendant Executive Office of the President's opposition, and plaintiffs' reply thereto, the Court will DENY plaintiffs' motion, as discussed and ordered below.

### I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations. The instant dispute revolves around the deposition of Kathy W. Jackson, a computer specialist employed by the Information Systems and Technology Division, Office of Administration, within the Executive Office of the President (EOP).

Jackson was designated to testify by defendant EOP pursuant to FED.R.CIV.P. 30(b)(6). Rule 30(b)(6) states, in pertinent part, that:

A party may in the party's notice and in a subpoena name as the deponent a ... governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify .... This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

FED.R.CIV.P. 30(b)(6). Plaintiffs originally named defendant EOP in its notice of deposition and described "the matter on which examination is requested" as "the computer systems commonly known as or referred to as 'Big Brother' and/or 'WHODB.'" Plaintiffs' Notice of Rule 30(b)(6) Deposition.[1]

Plaintiffs seek to elicit testimony on the WhoDB because, in their view, it could "likely produce highly relevant evidence of the misuse of government files." Plaintiff's Mot. to Compel at 2. The plaintiffs point to statements made by Linda Tripp that she witnessed information from FBI files being loaded onto White House computers, hence one of the plaintiffs' alleged White House connections to the FBI files matter. From this point, plaintiffs theorize that the computer system onto which Tripp saw this FBI information being loaded was the WhoDB. This theory appears to be based primarily on the fact that James Carville produced, in connection with his deposition, a file denominated "Filegate" which contained a newspaper article on the WhoDB.

This is not the first time this Court has needed to address the WhoDB deposition. Defendant EOP earlier moved for a protective order to preclude testimony about the WhoDB because, in its view, the WhoDB does not track any information related to FBI background investigations of current or former employees. In its April 13, 1998 Memorandum and Order, however, the Court denied defendant EOP's motion for a protective order on this point. In that opinion, the Court noted that the "[p]laintiffs' conclusion is not unreasonable and they are entitled to depose an individual knowledgeable about this potential source of information." *Alexander v. FBI*, C.A. 96–2123, Memorandum and Order at 16 (D.D.C. Apr. 13, 1998).

In a letter sent after the issuance of the Court's April 13 Memorandum and Order from plaintiffs' counsel to defendant EOP's counsel, the specific areas of inquiry as to the Rule 30(b)(6) designation were stated with greater specificity. This letter enumerated seven categories of pertinent testimony:

(1) what systems (including equipment and databases) are used to provide these functions;

(2) who is responsible for maintaining and operating the systems (including compliance with applicable laws and regulation to presidential/federal records);

(3) what instructions, guidelines, rules and training are provided to officials and appointees in connection with these systems;

(4) what information is collected and stored on the systems;

(5) how information stored may be retrieved (and, if necessary, reconstructed);

(6) who has access to the systems and how is such access controlled and monitored. (This would include information about access control, inventory and property tracking methodologies concerning computers and e-mail devices and systems assigned and/or accessible to, and actually accessed by, Defendants Clinton, Nussbaum, Livingstone, and Marceca (and their assistants, including interns, and volunteers) since 1992; and

(7) other relevant testimony and testimony that may lead to relevant evidence.

Letter of April 28, 1998, from Plaintiffs' Counsel to Defendant EOP's Counsel. Defendant EOP designated Jackson as their Rule 30(b)(6) witness on the WhoDB, and her deposition was taken on July 7, 1998. The dispute currently before the Court involves whether both parties complied with their duties under FED.R.CIV.P. 30(b)(6), and if not, what the consequences of that dereliction should be.

II. *Analysis*

■ Rule 30(b)(6) of the Federal Rules of Civil Procedure ultimately puts certain burdens on both parties. The initial burden under this rule falls on the plaintiffs. Specifically, before defendant EOP even needed to designate a witness under the notice of deposition, plaintiffs must have "described with reasonable particularity the matters on which examination is requested." FED.R.CIV.P. 30(b)(6). Some argument can be made that this description of subject matter must be

1. WhoDB is an acronym for the White House Office Database.

given in the notice of deposition, as the rule opens with the phrase, "A party may in the party's notice ... name as the deponent a ... governmental agency and describe with reasonable particularity the matters on which examination is requested." FED.R.CIV.P. 30(b)(6). Defendant EOP argues that such a description was not given here, because both plaintiffs' original notice of deposition and their subsequent re-notice of deposition merely state that the subject matter of inquiry will be "the computer systems commonly known as or referred to as 'Big Brother' and/or 'WHODB.' " Plaintiffs' Notice of Rule 30(b)(6) Deposition. Because, in defendant EOP's view, plaintiffs have not met their initial Rule 30(b)(6) burden, plaintiffs have no valid argument on Jackson's inability to answer questions propounded to her at her deposition.

The Court rejects defendant EOP's argument on this point. Plaintiffs have met their initial burden of noticing the Rule 30(b)(6) deposition and describing with reasonable particularity the subject matter of the testimony sought. First, the Court believes that the designation contained in both notices of deposition is sufficient. As defendant EOP itself points out, the implied limit of discoverability in any discovery device is FED. R.CIV.P. 26(b)(1). That is, plaintiffs specifically stated that they wanted testimony on the WhoDB; when combined with Rule 26(b)(1), the limits of that testimony is "any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Both parties are well aware of the discoverable issues in this case (whether they choose to abide by them or not). Defendant EOP was on sufficient notice of what discoverable matters the plaintiffs would inquire into on the WhoDB deposition. On the facts of this case, the Court finds that further specificity is not required by Rule 30(b)(6). Second, plaintiffs sent a letter to defendant EOP specifically enumerating seven areas of testimony on which the WhoDB witness (who was subsequently named) would be expected to testify. See Letter of April 28, 1998, from Plaintiffs' Counsel to Defendant EOP's Counsel. Although this letter obviously did not fall within the four corners of plaintiffs' notice of deposition, defendant EOP was clearly put on notice of the subject matters on which Jackson would be expected to testify. See United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.1996) (stating that the "reasonable particularity" requirement of FED.R.CIV.P. 30(b)(6) was met by notice given to the defendant-designator by means outside of the notice of deposition). Because the plaintiffs included sufficient particularity on the subject matter of the WhoDB deposition in their notice of deposition, re-notice of deposition, and subsequent explanatory letter, the plaintiffs have met their initial burden.

Under Rule 30(b)(6), once plaintiffs noticed the deposition and described the subject matter to be inquired upon with reasonable particularity, a number of duties were triggered that must be met by defendant EOP, as the party named in the notice. First, and most obviously, defendant EOP must designate one or more persons to testify on the subject matter designated by plaintiffs. Defendant EOP met this burden, at least to some degree, by designating Jackson. Defendant EOP states that Jackson was designated because she had the broadest base of knowledge available that would be responsive to plaintiffs' inquiries. The Court has reviewed the entire transcript of the Jackson deposition and finds nothing that would rebut this assertion. Jackson was able to answer many of plaintiffs' relevant questions, as discussed more fully below. Although there were some relevant questions that Jackson was unable to answer, and she was generally able to state who would be most likely to be able to answer those questions, it cannot be said that Jackson was an improper Rule 30(b)(6) witness.

Although plaintiffs embellish upon Jackson's testimony in an attempt to assert that she was a wholly inappropriate witness, plaintiffs have overstated their case in this regard. Plaintiffs' best argument, however, is that Jackson's designation alone is inadequate for defendant EOP to meet their Rule 30(b)(6) burden. This argument calls into

play certain duties that are not explicitly made a part of the rule.

■ Although there is not an abundance of case law on the topic of Rule 30(b)(6), and nearly no case law in this circuit, certain principles are consistent in every court opinion to address these issues so far. First, the deponent has the duty of being knowledgeable on the subject matter identified as the area of inquiry. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996); *SEC v. Morelli*, 143 F.R.D. 42, 44–45 (S.D.N.Y.1992); *In re Air Crash Disaster at Detroit Metro., Airport*, 130 F.R.D. 627, 630–32 (E.D.Mich. 1989). Clearly, a deponent that does not know about the subject matter to be inquired about is useless as a deponent at all. Second, the designating party is under the duty to designate more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiffs. *See* FED.R.CIV.P. 30(b)(6) ("[T]he organization so named shall designate *one or more* officers, directors, or managing agents, or other persons who consent to testify on its behalf. . . ." (emphasis added)); *Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 343 (N.D.Ill.1995) ("Citibank seems to believe that it can satisfy Rule 30(b)(6) by producing a witness with only selected information to offer. . . . The Federal Rules and this Court do not countenance self-selecting discovery by either party."). Third, the designating party has a duty to prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party. *See* FED.R.CIV.P. 30(b)(6) ("The persons so designated shall testify as to matters known or reasonably available to the organization."); *Protective Nat'l Ins. v. Commonwealth Ins.*, 137 F.R.D. 267, 277–78 (D.Neb.1989). Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know. Fourth, the designating party has a duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inqui-

ry. *See United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C.1996); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989). All of these duties correspond to the ultimate underlying purposes of Rule 30(b)(6)—namely, preventing serial depositions of various witnesses without knowledge within an organization and eliminating "bandying," which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself. *See* FED.R.CIV.P. 30(b)(6) Advisory Committee Notes, 1970 Amendment.

■ Plaintiffs argue that defendant EOP has violated either some or all of these duties because Jackson was unable to answer several questions posed by plaintiffs' counsel. Because of this lack of knowledge, plaintiffs move to compel defendant EOP to "re-designate" one or more appropriate Rule 30(b)(6) witnesses. Defendant EOP contends that Jackson was the proper designee because she possesses the broadest base of responsive knowledge, and that any required further inquiry should be done through less burdensome means such as interrogatories and requests for production.

Upon a review of the parties' memoranda and the deposition transcript, the Court agrees with both of the parties' contentions in certain respects. Namely, the plaintiffs are entitled to answers to some of the questions that were posed at the deposition and that could not be answered by Jackson, but these unanswered questions do not warrant new oral depositions at this juncture.

Jackson testified ably with regard to numerous questions spanning the spectrum from the purpose of the WhoDB to the nature of the information stored in the database itself and the specific names of certain users. Jackson stated that the WhoDB was designed as a resource database for all White House events and contacts. This purpose is seen in WhoDB's uses as a tracking device for White House function attendance logs and White House holiday card lists. This database, which became functional in 1995, was created because the White House lacked

a central repository for contact information on individuals and groups important to the President and First Lady. Initially, there were 150 authorized users of the WhoDB. According to Jackson, the current number of users has fallen to 66.

Jackson also testified in detail about the technical set-up of the WhoDB. As is common with databases, the WhoDB includes individual records with various fields, such as name, gender, martial status, address, and a variety of others.[2] According to Jackson's testimony, she searched the WhoDB in various ways to determine if it included any type of coding for perceived adversaries of the White House; she found nothing that would so indicate. As Jackson explains, even assuming that the WhoDB was a repository for information on White House adversaries, the only field in which information could be readily added on any given person at any length is the "comments" field. Jackson did a search of the comments field and came up with no such information. Any information stored in the comments field would be limited to 240 characters. Among 460,000 active records on the WhoDB, there are no more that 2,200 comments containing information of any kind.

Although the usefulness of testimony on user access appears to be limited given the apparent inability to use the WhoDB to store FBI file information, Jackson nonetheless testified extensively on user access. In short, she testified that she "is sure" that the software and computer hardware necessary to access WhoDB is not installed outside of the White House complex. Thus, in her view, other potential routes of access to the WhoDB to the White House, such as the Democratic National Committee, are highly unlikely. As Jackson also testified, she only knows of one person in the White House Counsel's Office that has had access to the WhoDB—Bruce Lindsey. Jackson does not, however, know why Lindsey had or needed such access.

As can be seen from Jackson's testimony, she testified knowledgeably on a wide array of subject matter. That being said, however, Jackson was unable to testify to several lines of inquiry by plaintiffs' counsel. Although the Court does not wish to engage at this time in an analysis of the relevance of each and every unanswered question at Jackson's deposition because such an analysis is not necessitated by the motions before the Court, one example of a relevant, unanswered question would be about the data that went on the WhoDB when the system was first set up. Jackson Depo. at 289. Plaintiffs are entitled to these types of answers, and the Court will not allow these questions to go unanswered simply because Jackson was the person with the broadest base of knowledge. Defendant EOP has a duty to designate more than one person, if necessary, and has a duty to do so on its own when it becomes apparent that the current designee cannot adequately respond. Therefore, the Court will allow plaintiffs to receive responses to questions that went unanswered at the Jackson deposition.

The Court will not, however, allow plaintiffs to receive answers to these questions at this time by means of new oral depositions. As explained in the Court's order below, the Court will deny plaintiffs' motion for a new Rule 30(b)(6) witness without prejudice. If, after they have received written discovery responses on this issue and have taken the deposition of Betsy Pond,[3] a new Rule 30(b)(6) WhoDB witness becomes necessary, plaintiffs may again move to compel the Court to grant them such relief at that time. As the plaintiffs themselves suggest in their motion to compel, Jackson indicated that several of the questions that she could not answer may be better posed to several other people. In reviewing the deposition transcript, the Court does not believe that the importance or number of these unanswered questions warrants entirely new depositions. Instead, the plaintiffs shall submit any questions for which they did not receive answers upon defendant EOP in the form of interrog-

2. WhoDB users do not have the ability to add their own codes or fields.

3. According to plaintiffs, Linda Tripp saw Pond inputting FBI file information into a database.

Assuming the veracity of this testimony, Pond would clearly be the person who knows whether the WhoDB was actually being used for the inputting of FBI file information at all.

atories and requests for production. *See United States v. Massachusetts Indus. Finance Agency*, 162 F.R.D. 410 (D.Mass.1995) (allowing the same remedy for incomplete testimony by a Rule 30(b)(6) witness when new oral depositions were unwarranted). The fact that Jackson was an inadequate witness in certain narrow respects does not lead to the conclusion, on the facts of this case, that the plaintiffs are entitled to take several new depositions. Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a "memory contest." *See Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, No. 94–CIV–1942, 1995 WL 686715 (S.D.N.Y. Nov. 17, 1995).

## III. *Sanctions*

█ Plaintiffs ask to be reimbursed for their attorneys' fees and costs accrued as a result of the Jackson deposition and subsequent motions thereto. Plaintiffs base their motion on Rule 37 of the Federal Rules of Civil Procedure. The leading case on Rule 37 sanctions for the inappropriate designation of the Rule 30(b)(6) witness is *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir.1993). In *Resolution Trust Corp.*, the Fifth Circuit summarized the relevant proposition in the following manner:

> Rule 37 authorizes the district court to impose sanctions against a party for failing to appear "before the officer who is to take the deposition, after being served with the proper notice." … Rule 30(b)(6) … places the burden of identifying responsive witnesses for a corporation on the corporation. Obviously, this presents a potential for abuse which is not extant where the party noticing the deposition specifies the deponent. When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Id.* at 197. Thus, in short, the Fifth Circuit found that the improper Rule 30(b)(6) designation on the facts of that case amounted to a failure to appear under Rule 37, thereby warranting sanctions.

Although the plaintiffs attempt to bring the Jackson deposition within the Fifth Circuit's analysis, the facts belie such a conclusion. As stated above, Jackson testified adequately in numerous respects. When she could not so testify, Jackson generally provided the name of the person that could answer plaintiffs' counsel's questions. Jackson appears to be an appropriate choice for a Rule 30(b)(6) witness. Rule 30(b)(6) puts several duties on the designating party and on the deponent, but one of them is not omniscience. Although plaintiffs are entitled to answers on many of their unanswered questions, they are not entitled to sanctions. Jackson's deposition can hardly be said to be tantamount to a failure to appear under Rule 37. Therefore, plaintiffs' request for attorneys' fees and costs will be denied.

## IV. *Conclusion*

For the reasons stated above, the Court HEREBY ORDERS that Plaintiffs' Motion to Compel Re–Designation of Witness Concerning "WHODB" Under Fed.R.Civ.P. 30(b)(6) and for Attorneys' Fees and Costs is DENIED without prejudice. In this regard, the Court hereby ORDERS that:

1. Plaintiffs may submit to defendant EOP interrogatories and requests for production in order to receive responses to questions posed by plaintiffs' counsel at Jackson's deposition to which Jackson did not adequately respond.

2. Plaintiffs' request to take new Rule 30(b)(6) oral depositions on the WhoDB pursuant to a re-designation of such witnesses is DENIED without prejudice.

3. Plaintiffs' request for attorneys' fees and costs is DENIED.

4. Plaintiffs may renew their motion to compel a re-designation of a Rule 30(b)(6) WhoDB witness, for good cause shown, after they have received written discovery responses and taken the deposition of Betsy Pond.

5. Leave to depose Ms. Pond is HEREBY GRANTED, *sua sponte.*

SO ORDERED.