**Roy E. DISNEY, Plaintiff,**

v.

**The WALT DISNEY COMPANY,
Defendant.**

C.A. No. 234–N.

Court of Chancery of Delaware,
New Castle County.

Submitted: June 9, 2004.
Decided: Aug. 6, 2004.

A. Gilchrist Sparks, III, S. Mark Hurd, Andrew H. Lippstone, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Stephen D. Alexander, Fried, Frank, Harris, Shriver & Jacobson, L.L.P., Los Angeles, CA, for the Plaintiff.

Robert K. Payson, Donald J. Wolfe, Jr., Stephen C. Norman, Potter Anderson & Corroon, L.L.P., Wilmington, DE; Theodore N. Mirvis, Paul K. Rowe, Robin M. Wall, Wachtell, Lipton, Rosen & Katz, New York City, for the Defendant.

## OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

A stockholder who obtained books and records of a Delaware corporation for the purpose of investigating suspicions or mismanagement or waste of corporate assets now wishes to publicly disseminate certain information found in those documents as part of that stockholder's ongoing campaign to effect changes in the corporation's senior management. The information at issue is not otherwise publicly available, and the corporation has designated it as "confidential" pursuant to a letter agreement between the parties. As contemplated by that agreement, the stockholder has moved for an order finding that the information is not appropriately designated "confidential."

The question presented is whether a stockholder who obtains access to books and records under Section 220 of the Delaware General Corporation Law in order to investigate mismanagement or corporate waste should be free to publicly disseminate (for example, by placing the documents on a website) information found in those documents that the corporation regards as "confidential."

### II.

Plaintiff Roy E. Disney is a stockholder and former long-serving director of the Walt Disney Company, a Delaware corporation with its principal offices in Burbank, California. Mr. Disney resigned as a Company director on November 30, 2003. His long-time associate, Stanley Gold, resigned the next day. After their resignations, Messrs. Disney and Gold initiated an exempt solicitation pursuant to Rule 14(a)–2(b)(1) under the Securities Exchange Act of 1934, as part of a campaign to educate shareholders about the issues they saw facing the Company and to encourage a "no" vote on the reelection of Michael Eisner and three other members of the Company board of directors at the March 3, 2004 Annual Meeting.

In late January 2004, in connection with these efforts, Mr. Disney served a stockholder demand pursuant to 8 *Del. C.* § 220 seeking access to certain books and records on the Company, along with a demand for stocklist materials.[1] The books and records demand requested the inspection of documents that were prepared for, delivered to, or used by the Company's board of directors or its compensation committee in connection with compensation decisions for the Company's five senior executives in FY 2002 and FY 2003. The books and records demand stated that its purpose was "to investigate possible mismanagement, waste of corporate assets, improper influence or conduct, improper conflicts of interest between directors and officers and the Compensation Committee and lack of due care" regarding senior executive bonus or other performance-based compensation. By contrast, the stocklist demand stated that Mr. Disney's request therefor was for the purpose of communicating with stockholders.

---

1. As board members, Messrs. Disney and Gold participated in the approval of and were bound by a written confidentiality policy adopted on June 22, 2003 that bars present *and former* directors from disclosing information entrusted to them by reason of their positions, and includes a prohibition on the disclosure of "[n]on-public information about discussions and deliberations" of the board.

The Company did not object to Mr. Disney's purpose for seeking the books and records inspection or to the scope of the documents demanded. It did, however, insist that Mr. Disney agree to a form of confidentiality agreement that would permit the Company to designate broad categories of non-public information as "confidential" and would prohibit Mr. Disney from publicly disseminating any "confidential" information. Mr. Disney objected to the breadth of that proposed order.

When the parties could not agree on a form of confidentiality order, Mr. Disney began this action.[2] Shortly thereafter, by letter dated February 13, 2003, the parties agreed to a form of confidentiality agreement that did not limit the Company's ability to designate documents as "confidential," and which obligated Mr. Disney to hold information so designated in "strict confidence." The letter agreement also permitted Mr. Disney to challenge the Company's designations in this court if the parties could not resolve their disagreements through "good-faith negotiations."

The Company produced over 600 pages of material in response to the demand, of which about 30% of the non-duplicative pages were marked "confidential." The Company did not mark as confidential agendas and minutes of meetings of its board of directors and committees. According to the Company, the documents marked as confidential were "performance evaluations, documents reflecting the board's deliberative process and non-public financial targets established for a tax-qualified compensation plan."

Mr. Disney objected to a large proportion of the Company's confidentiality designations and applied to the court for relief. In a letter to the court dated February 22, 2004, Mr. Disney's counsel took the position that the scope of permissible designation should be limited to the following: "trade secrets and proprietary technical information, material non-public financial information which the Company has a legitimate basis for not having disclosed, competitively or market sensitive information about possible transactions and personally sensitive information (such as unlisted telephone numbers and social security numbers)." Support for such a limited scope of appropriate confidentiality designation was not found in cases arising under Section 220, but in cases relating to the treatment of documents produced in discovery in ordinary civil actions, such as *ID Biomedical Corp. v. TM Technologies, Inc.*[3]

After a telephonic hearing, the court denied relief, stating that the general litigation standard set forth in *ID Biomedical* was not appropriately applied in the context of a books and records demand made under Section 220. Rather, the court pointed out, in Section 220 books and records cases it is customary for any final order to be conditioned upon a form of confidentiality order that "can reasonably be expected to be quite tight."[4] The court urged the parties to narrow the scope of their differences and, if a disagreement still existed, to make further submissions.

Mr. Disney thereafter narrowed the focus of his objection to 10 documents totaling 34 pages. After further discussions with the Company's attorneys failed to

---

2. The complaint also seeks production of the stocklist materials needed to communicate with Company stockholders. That aspect of the complaint was fully resolved by agreement of the parties.

3. 1994 WL 384605 (Del.Ch.)

4. Trans. of February 23, 2004 Teleconference at p. 32.

produce an agreement, Mr. Disney renewed his motion by letter dated February 25 and asked for immediate consideration in light of the March 3, 2004 Annual Meeting date. The court held an immediate teleconference on February 25 and allowed the Company's lawyers to present their opposition orally. While this second hearing focused on a more manageable universe of documents, the court remained unconvinced that Mr. Disney had shown good grounds for the relief he sought. But, because time pressures associated with the ongoing election dispute severely limited the court's ability to consider the issue, the court did not rule definitively, instead permitting Mr. Disney to present the matter again on a more complete record.

Mr. Disney thereafter renewed his application on a complete record and the parties have had the opportunity to fully brief the important questions involved. The court heard argument on Mr. Disney's modified application on June 9, 2004. This is the court's ruling on that application.

### III.

As is well known, Section 220 of the Delaware General Corporation Law provides every stockholder of a Delaware corporation acting for a proper purpose a powerful right to inspect the company's books and records.[5] That statute also provides for a summary procedure in this court to enforce that right. Perhaps less frequently cited, Section 220(c)(3) also gives the court broad discretion in exercising its powers under that section, to fashion an appropriate order, as follows: "The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other or

further relief as the Court may deem just and proper."

In this case, the Company contested neither the propriety of Mr. Disney's purpose nor the scope of the demand he presented. Instead, the area of dispute between the parties related to the terms of the confidentiality agreement. This dispute caused Mr. Disney to file a complaint, but shortly afterward the parties reached a resolution that permitted the production to go forward by deferring any judicial review of the scope of confidentiality until after the production was made. Although the procedural posture of the matter is somewhat unusual, it is assumed that the parties understood that the court would examine if it were exercising its statutory discretion to "prescribe any limitations or conditions with reference to the inspection."

### IV.

The court begins its analysis with the presumption that the production of nonpublic corporate books and records to a stockholder making a demand pursuant to Section 220 should be conditioned upon a reasonable confidentiality order. As the Delaware Supreme Court said in *CM & M Group, Inc. v. Carroll,* in speaking of Section 220:

> Counterposed to the duty to protect the rights of the stockholder, the court has the duty to safeguard the rights and legitimate interests of the corporation.... It follows that the Court of Chancery is empowered to protect the corporation's legitimate interests and to prevent possible abuse of the shareholder's right of inspection by placing such reasonable restrictions and limitations as its deems proper on the exercise of the right.[6]

5. 8 *Del. C.* § 220.

6. 453 A.2d 788, 793–94 (Del.1982) (citations omitted).

The Supreme Court then remanded with an instruction that the Court of Chancery make "disclosure contingent upon the stockholder first consenting to a reasonable confidentiality agreement." [7] In fact, it is often the case that the Court of Chancery will condition its judgment in Section 220 cases on the entry of a reasonable confidentiality order "to prevent the dissemination of confidential business information to 'curiosity seekers.' " [8]

While these concerns have been particularly noted in the context of privately held firms, it is nevertheless true that public corporations, such as the Company in this case, possess enormous amounts of internal information that is not, in the ordinary course, required to be publicly disclosed. To that extent, at least, those corporations have the same interest in preventing the public disclosure and examination of that information as any other corporation. In this case, for example, the documents at issue all relate to the private communications among or deliberations of the Company's board of directors. They include letters, emails, and an internal memorandum (as well as an excerpt from the minutes of a meeting of the Company's compensation committee and a fragment of an attachment thereto) reflecting and relating directly to preliminary deliberations of the Company's board of directors. There is little doubt that those who participated in these communications had a reasonable expectation that they would remain private unless disclosed in the course of litigation or pursuant to some other legal requirement.

As this suggests, our law already recognizes circumstances in which a stockholder is entitled to use information obtained by making a Section 220 demand in ways that will lead to its public disclosure. Most notably, our law encourages stockholders to utilize Section 220 as one of the "tools at hand" in conducting pre-suit investigation of suspected mismanagement or corporate waste. [9] When such investigation reveals a good faith basis for suit, the stockholder will be able to use information covered by such a confidentiality order in formulating a complaint, and, in many cases, that information will become publicly available in the course of that litigation, even if it is initially filed under seal. [10] In this context, Court of Chancery Rule 11 and analogous rules governing proceedings in other courts provide an important constraint on the public disclosure of such information, as the person signing the complaint is representing to the court that "it is not being presented for an improper purpose," such as "to harass" and that the allegations "have evidentiary support." [11] Moreover, the court will itself play a role in determining whether or to what extent otherwise confidential information found in the record of the litigation should be made public.

In addition to filing stockholder litigation alleging some underlying breach of fiduciary duty, this same authority also would support the use of information obtained through a Section 220 demand to bring suit attacking some aspect of the Company's public disclosures, under either federal or state law. Once again, Rule 11

---

**7.** *Stroud v. Grace,* 606 A.2d 75, 89 (Del.1992) (discussing the holding of *CM & M Group, Inc.,* 453 A.2d at 793–94).

**8.** *Id.* (and cases cited therein).

**9.** *Rales v. Blasband,* 634 A.2d 927, 934 at n. 10 (Del.1993).

**10.** *In re The Walt Disney Co. Deriv. Litig.,* 2004 WL 368938 (Del.Ch. Feb. 24, 2004).

**11.** Ch. Ct. R. 11(b)(1) and (b)(3).

serves as a useful filter in screening out baseless or vexatious litigation and in preserving the confidentiality of non-public information.

Finally, as suggested at the February 25 hearing in this case, this court will entertain an application for relief from a Section 220 confidentiality agreement in the context of an active proxy solicitation. Although the court is not aware of other decisions discussing the standard to be applied, it can be assumed that the burden on the moving party would be heavy. For example, the person seeking relief will be required to show a likelihood that disclosure of information designated "confidential" is needed to prevent the corporation's proxy materials from being false and misleading in some material respect, or equally compelling circumstances. Where, based on fact, a substantial burden of that kind is met, it will ordinarily be the case that the corporation's interest in preventing disclosure will be overcome, although the court will be in a position to make that assessment.

Mr. Disney argues eloquently and forcefully for a different and novel use of a Section 220 books and records demand— that of ferreting out information for use in an ongoing public relations campaign challenging the truthfulness or completeness of a corporation's routine public disclosures, especially its disclosures relating to executive compensation. He argues that disclosure of the information at issue here will serve the best interests of the Company's stockholders "who, given the supposedly incomplete and misleading disclosures made by the Company, have under Delaware law an important right to receive a full and fair disclosure of facts." This is particularly true, he stresses, "where, as here, the disclosure pertains to the bases for a compensation committee's decisions to award enormous compensation packages to a public company's top executives."[12]

In support of this argument, Mr. Disney cites a number of Delaware cases generally recognizing and enforcing the duty of disclosure owed by all directors of Delaware corporations, such as *Rosenblatt v. Getty Oil Co.*[13] and *Malone v. Brincat.*[14] He suggests that the stockholders' need to "know the whole truth" is especially urgent in this case because "there exists a 'crisis of confidence' in executive compensation in the United States that reflects a 'mistrust of the system.'"[15] Thus, he argues, "requiring disclosure of the bases for senior executive compensation decisions in the context of a Section 220 case promotes good public policy."

Summarizing his position quite cogently, Mr. Disney states, as follows:

By allowing shareholders to use the "tools at hand" under Section 220 to gather information regarding executive compensation decisions in connection with an exercise of the shareholder franchise (and not just in the context of costly and burdensome litigation), and to disclose that information when it is inconsistent with Company and Board statements on the subject, the Court will allow shareholders to more effectively use the "electoral check" upon which the legitimacy of the corporate form rests.[16]

The court is unable to accept this expansive reading of Section 220. To begin with, despite Mr. Disney's invitation to do so, there is no basis in the language of the

**12.** Pl's Op. Br. at 10.

**13.** 493 A.2d 929 (Del.1985).

**14.** 722 A.2d 5 (Del.1998).

**15.** Pl's Op. Br. at 12.

**16.** *Id.* at 15.

statute to limit the proposed use of Section 220 to executive compensation issues. Instead, the court would have to recognize a right to make a books and records demand for the purpose of investigating any well grounded suspicion of mismanagement and then publicly disclosing information discovered from that investigation. In addition, the expansion for which Mr. Disney argues would extend equally to any single stockholder, not only to those thought to adequately represent the interests of the corporation or the stockholders as a whole. Moreover, a stockholder seeking to disclose non-public information in those circumstances would not be under the same fiduciary obligation as the corporation to make complete or candid disclosures. Instead, as is evident in this case, the disclosure sought to be made would likely relate to snippets of information gleaned from a few emails or internal memoranda that the stockholder contends are inconsistent with the corporation's public disclosures. Undoubtedly, any decision that permitted the public disclosure of that information would lead the corporation to disclose even more otherwise non-public information in order to put the stockholder's disclosures in what the corporation believes to be the proper context. All in all, this is not a process that promises to advance the best interests of the corporation or its stockholders.

■■■ The court understands that there can be exigent circumstances (*e.g.*, an active election contest) in which time constraints will not allow a stockholder to draft and file a complaint and then deal with issues of confidentiality in the ordinary course. In those limited circumstances, and upon a clear showing, this court will entertain extraordinary

applications to remove "confidential" designations from documents produced as the result of a Section 220 proceeding. In other circumstances, however, a stockholder making a books and records demand can expect that documents designated as confidential pursuant to a reasonable confidentiality agreement will remain confidential unless the stockholder concludes that grounds exist to initiate litigation and the court in which that proceeding is brought determines to include those documents in the public record.[17] By way of example, if, as he suggests, Mr. Disney believes that the documents he has received show that the Company's public disclosures are materially false and misleading, he is free to use those documents to draft a complaint setting forth such a claim. But he cannot use confidential information received for the proper purpose of investigating and seeking to remediate wrongdoing for the purpose of being a self-appointed publisher of the Company's proprietary information.

## V.

For all these reasons, the motion to lift the confidentiality designation on certain documents is DENIED. The matter otherwise having been concluded by agreement of the parties, the CASE IS DISMISSED. IT IS SO ORDERED.

---

17. In those same circumstances, the court would also be likely to authorize the disclosure of otherwise "confidential" information to the Securities and Exchange Commission or other appropriate regulatory body.