IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALEX TIGER, | § | |
| | § | No. 23, 2019 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Court of Chancery |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. 2017-0776 |
| BOAST APPAREL, INC. | § | |
| (a/k/a BAI Capital Holdings, Inc.), | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: June 12, 2019
Decided: August 7, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

Upon appeal from the Court of Chancery. **AFFIRMED**.

David A. Felice, Esquire, Bailey & Glasser, LLP, Wilmington, Delaware for Appellant Alex Tiger.

Kevin G. Abrams, Esquire, Matthew L. Miller, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware, Brian J. Capitummino, Esquire, Woods Oviatt Gilman LLP, Rochester, New York, for Appellee Boast Apparel, Inc.

**TRAYNOR**, Justice:

In a report that was adopted by the Court of Chancery, a Master in Chancery held that books and records produced to a stockholder under Section 220 of the Delaware General Corporation Law[1] are "presumptively subject to a 'reasonable confidentiality order.'"[2] And in response to the stockholder's request for a time limitation on such a confidentiality order, the Master responded that, because the stockholder had not demonstrated the existence of exigent circumstances, confidentiality should be maintained "indefinitely, unless and until the stockholder files suit, at which point confidentiality would be governed by the applicable court rules."[3] After the Court of Chancery adopted the Master's Report, the stockholder appealed.

We hold that, although the Court of Chancery may—and typically does—condition Section 220 inspections on the entry of a reasonable confidentiality order, such inspections are not subject to a presumption of confidentiality. We further hold that when the court, in the exercise of its discretion, enters a confidentiality order, the order's temporal duration is not dependent on a showing of the absence of exigent circumstances by the stockholder. Rather, the Court of Chancery should weigh the stockholder's legitimate interests in free communication against the

---

[1] 8 *Del. C.* § 220.
[2] Master's Post-trial Draft Report ("Master's Report"), *Tiger v. Boast Apparel, Inc.*, 2017-0776 (Del. Ch. July 23, 2018) Dkt. No. 20, available at Ex. C.
[3] *Master's Report*, *supra* note 2, at 8.

corporation's legitimate interests in confidentiality. Nevertheless, although we disagree with the Master's formulation of the principles governing confidentiality in the Section 220 inspection context, the confidentiality order that the Court of Chancery ultimately entered seems to us to be within the range of reasonableness—and, thus, not an abuse of discretion—given the facts and circumstances of this case. We therefore affirm the Court of Chancery's order and final judgment.

## I. BACKGROUND

Boast is an apparel brand created by tennis player Bill St. John in 1973. Although Boast, which featured a Japanese maple leaf logo,[4] enjoyed some success in the 70s and 80s, St. John retired the brand in the 90s.

In 2010, Alex Tiger—the plaintiff in this suit—and John Dowling decided to revive the Boast Brand. The pair started Boast Investors, LLC, which would later be converted into the named defendant in this case, BAI Capital Holdings, Inc. ("BAI"), as well as Branded Boast, LLC. Boast Investors owned a majority interest in Branded Boast, which in turn purchased the Boast intellectual property from St. John's holding company, Boast, Inc.

---

[4] The logo not coincidentally resembles a marijuana leaf. Daniel Roberts, "Using a U.S. Open underdog to refresh a classic tennis brand," FORTUNE (Sept. 7, 2015), available at https://web.archive.org/web/20190415225951/https://fortune.com/2015/09/07/boast-tennis-donald-young/.

3

Over the next several years, Tiger and Dowling had several conflicts in managing Boast Investors. In particular, Dowling increased his equity stake in Boast Investors and its successors through a series of mechanisms that Tiger opposed. First, Dowling loaned $4 million to Boast Investors. Then, after an abortive attempt, Dowling succeeded on his second try at amending Boast Investors' operating agreement and converted his loans into additional member units in Boast Investors. As a part of this conversion, other members were required to contribute additional capital in a preemptive rights offering or their stakes would be diluted. Tiger objected to this offering and did not participate. In November 2014, Boast Investors converted itself from a limited liability company to the corporation that became BAI.[5] Tiger and Dowling attempted to resolve their disagreements through negotiations but were not able to do so.

On December 9, 2014, Tiger delivered his first Section 220 demand to BAI, requesting 22 categories of documents. The stated purposes of Tiger's inspection demand were to, among other things, value his shares, investigate potential mismanagement, and investigate director independence. BAI responded with a proposed confidentiality agreement. This first proposed agreement would have barred Tiger from using BAI documents in subsequent litigation. Tiger rejected this

---

[5] *See* Delaware Department of State, Division of Corporations, File No. 4809271 (BAI Capital Holdings, Inc.). The corporation was initially named Boast Apparel, Inc.; Dowling later changed the name to BAI Capital Holdings, Inc. *Id.*

4

proposal. BAI made a revised proposal that prohibited use of the documents in litigation other than derivative actions. Tiger then requested that BAI produce all documents that were not confidential, but BAI demurred.

On February 24, 2017, Tiger sent a second Section 220 demand to BAI. BAI's CFO offered Tiger the opportunity to review Tiger's demanded documents but once again asked Tiger to sign a confidentiality agreement. As before, Tiger asked BAI to produce all non-confidential materials, but BAI's CFO once more asked for a confidentiality agreement. The parties negotiated over the confidentiality agreement but were unable to come to an agreement.

In October 2017, BAI gave notice under 8 *Del. C.* § 228(e) to non-consenting stockholders that it had sold substantially all of its assets to Boast Brands Group, LLC, a company owned by a group of clothing and investment companies. In consideration for the sale, BAI received approximately $1 million in cash plus a 10% equity stake in Boast Brands Group.

Tiger then filed a Section 220 action against BAI in the Court of Chancery,[6] demanding access to the books and records he had specified in his 2017 demand, which Tiger had amended on May 8, 2017. The case was assigned to a Master in Chancery.

---

[6] Verified Compl. ¶ 42, *Tiger v. Boast Apparel, Inc.*, 2017-0776 (Del. Ch. Oct. 30, 2017) Dkt. No. 1.

The primary dispute between the parties before the Court of Chancery was the scope of Tiger's confidentiality obligations upon BAI's production of the relevant books and records. Tiger suggested a one-year confidentiality order, while BAI, citing previous cases in which the Court of Chancery issued three-year confidentiality orders on financial documents, pushed for a "default three-year period of confidentiality."[7]

After considering the parties' respective positions, the Master in Chancery submitted her report on July 23, 2018, recommending an indefinite confidentiality period lasting up to and until Tiger filed suit based on facts learned through his inspection, after which confidentiality would be controlled by the applicable court rules. Tiger took exception to the Master's Report, but the Master—having become Vice Chancellor—rejected Tiger's exceptions and adopted the Master's Report, including the indefinite confidentiality period.[8]

Tiger appealed, arguing that the indefinite nature of the confidentiality order constituted an abuse of discretion and that the Court of Chancery failed to account for his status as a market participant.

---

[7] Joint App. at JA115 ("JA__" hereafter).
[8] Ex. A.

## II. STANDARD OF REVIEW

"In a § 220 action, we review for abuse of discretion the Court of Chancery's determination of both the scope of relief and any limitations or conditions on that relief. This standard of review is highly deferential. . . . Delaware courts have viewed the determination of whether to impose a condition or limitation on an inspection as inherently case-by-case and fact[-]specific. Questions of law, however, are reviewed *de novo*."[9]

"This Court may affirm on the basis of a different rationale than that which was articulated by the trial court[] if the issue was fairly presented to the trial court."[10]

## III. ANALYSIS

In *CM & M Group, Inc. v. Carroll*,[11] we held that the Court of Chancery is empowered to place reasonable confidentiality restrictions on a Section 220 production. We held that when ordering relief under Section 220, the Court of Chancery was charged with protecting the rights of the stockholder as well as the rights and legitimate interests of the corporation.[12] We then ruled that Section 220's grant of power to the Court of Chancery to "prescribe any limitations or conditions

---

[9] *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 748 (Del. 2019) (internal quotations and footnotes omitted).
[10] *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 849 (Del. 2015).
[11] 453 A.2d 788 (Del. 1982).
[12] *Id.* at 793.

7

with reference to the inspection" encompassed the power to prescribe a confidentiality limitation.[13]

Relevant to the case before us now—and especially the Master's reference to a presumption of confidentiality—is the Court of Chancery's 2004 opinion in *Disney v. Walt Disney Co.*[14] In that case, plaintiff-stockholder Roy E. Disney had executed a confidentiality agreement with The Walt Disney Company and received books and records under Section 220. Mr. Disney objected to the Disney Company's designations of certain documents as confidential and petitioned the Court of Chancery to lift the confidentiality conditions so that he might conduct a proxy campaign against the directors.

In its own words, the Court of Chancery "beg[an] its analysis with the presumption that the production of nonpublic corporate books and records to a stockholder making a demand pursuant to Section 220 should be conditioned upon a reasonable confidentiality order."[15] In recognizing such a presumption, the Court of Chancery cited *CM & M*, which makes no mention of a presumption of confidentiality.

The Court of Chancery then denied Mr. Disney's request, and Mr. Disney appealed to this Court. We found that the Court of Chancery's decision was unclear

---

[13] *Id.* at 793–94.
[14] 857 A.2d 444 (Del. Ch. 2004).
[15] *Id*. at 447.

8

and remanded the case, ordering the Court of Chancery to "make specific findings as to whether the documents are confidential" and to "address the potential benefits and potential harm from disclosing the documents for [Mr.] Disney's stated purposes."[16] On remand, the Court of Chancery found that the documents were confidential and interpreted our command to address the potential benefits and potential harm as an order to conduct a balancing test in order to determine whether lifting the confidentiality order was appropriate. After doing so, the Court of Chancery once again denied Mr. Disney's petition after finding that the documents in controversy should not be made public.

Although the Court of Chancery reached the same final conclusion on remand as it did before Mr. Disney's appeal, it recast its mode of inquiry, retreating from its earlier position that there is a *presumption* of confidentiality. Instead, this time the Court of Chancery stated that the "analysis begins, as did the [earlier Chancery decision denying Mr. Disney's petition], with the *observation* that the provision of nonpublic corporate books and records to a stockholder making a demand pursuant

---

[16] *Disney v. Walt Disney Co.*, No. 380, 2004 (Del. Mar. 31, 2005) (Order). No commercial legal database appears to have maintained a copy of this order; for reference, we have attached it as an appendix to this opinion.

9

to Section 220 will *normally* be conditioned upon a reasonable confidentiality order."[17]

## A. There is no presumption of confidentiality in Section 220 productions

Although on remand the Court of Chancery in *Disney* essentially disclaimed a presumption of confidentiality, its original 2004 statement touting a presumption has, directly and indirectly, become the basis for several recent Court of Chancery decisions applying just such a presumption.[18] And here the Master's Report

---

[17] *Disney v. Walt Disney Co.*, 2005 WL 1538336, at *1 (Del. Ch. June 20, 2005) (emphasis added). Indeed, several Delaware cases treat such confidentiality agreements as a matter-of-course so long as they are reasonable. *Southpaw Credit Opportunity Master Fund LP v. Advanced Battery Techs., Inc.*, 2015 WL 915486, at *9 (Del. Ch. Feb. 26, 2015); *Amalgamated Bank v. UICI*, 2005 WL 1377432, at *6 (Del. Ch. June 2, 2005). Although, as BAI stated, there is no "hard and fast rule," JA85, the Court of Chancery has ordered a range of time limits on confidentiality restrictions, with longer limits applying to financial documents. *See e.g.*, *Baker v. Sadiq*, 2016 WL 4988427, at *2 (Del. Ch. June 8, 2016); *Ravenswood Inv. Co., L.P. v. Winmill & Co. Inc.*, 2014 WL 7451505 (Del. Ch. Dec. 31, 2014). The Court of Chancery has further noted that the need for confidentiality generally decreases over time because the information in documents tends to become "stale" with age. *Baker*, 2016 WL 4988427, at *2.

[18] Textual and temporal evidence suggests that this occurred in part through the mediation of a widely used corporate law treatise. *See* Edward C. Welch *et al.*, *Folk on the Delaware General Corporation Law* ("Folk on the DGCL" hereafter), § 220.06[1], 7-241 (6th ed.) (citing *Disney*, 857 A.2d at 447); *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016) (citing *Folk on the DGCL*, at § 220.06); *Rodgers v. Cypress Semiconductor Corp.*, 2017 WL 1380621, at *6 (Del. Ch. Apr. 17, 2017) (citing *Disney*, 857 A.2d at 447); *Elow v. Express Scripts Holding Co.*, 2017 WL 2352151, at *7 n.80 (Del. Ch. May 31, 2017) (citing *Yahoo!*, 132 A.3d at 796–97); *Schnatter v. Papa John's Int'l, Inc.*, 2019 WL 194634, at *17 (Del. Ch. Jan. 15, 2019) (citing *Disney*, 857 A.2d at 447). Other Court of Chancery cases, however, have taken a more restrained view of *Disney*. *See, e.g.*, *Louisiana Mun. Police Employees' Ret. Sys. v. Countrywide Fin. Corp.*, 2007 WL 4373116, at *2 n.7 (Del. Ch. Dec. 6, 2007) ("As Countrywide argues, nonpublic documents shared as the result of a Section 220 action are customarily given confidential treatment. *See, e.g.*, *Disney v. Walt Disney Co.*, 857 A.2d 444, 447 (Del. Ch. 2004). The need for confidential treatment is generally readily apparent. In this instance, however, the documents sought are several years old and do not involve the ongoing business of Countrywide. There, of course, may be valid reasons for confidential treatment of these documents, but *one cannot conclude reflexively that the need is readily apparent*." (emphasis added)).

followed suit, paraphrasing a corporate law treatise,[19] quoting only from the Court of Chancery's original *Disney* decision, and concluding that there is a presumption of confidentiality.

We now clarify that there is no presumption of confidentiality in Section 220 productions. As we have held, the Court of Chancery certainly has the power to impose reasonable confidentiality restrictions. Furthermore, we expect that the targets of Section 220 demands will often be able to demonstrate that some degree of confidentiality is warranted where they are asked to produce nonpublic information. But just as *Disney* required an assessment of benefits and harms when considering lifting a confidentiality order, the Court of Chancery likewise must assess and compare benefits[20] and harms when determining the initial degree and duration of confidentiality. If anything, the burden upon the corporation is more demanding—and the corresponding burden upon the stockholder less demanding—

---

In that a "presumption" appears to have arisen out of almost nowhere, this case rings with the echo of the recent case *KT4 v. Palantir Technologies*. 203 A.3d 738 (Del. 2019). In *KT4*, we rejected the notion that jurisdictional use restrictions were a "norm" in Section 220 production agreements. *Id*. at 762. It appeared to us in *KT4* that a few passing lines in *United Technologies Corp. v. Treppel*, 109 A.3d 553 (Del. 2014), which merely held that the Court of Chancery had the *authority* to impose jurisdictional use restrictions, had been improperly transformed into a "*norm*" that the Court of Chancery would impose such restrictions.

[19] *Compare Folk on the DGCL*, *supra* note 18, at § 220.06[1], 7-241–42 *to Master's Report*, *supra* note 2, at 7.

[20] For example, in *Disney*, we contemplated that these benefits might include a stockholder's reasonable desire to use Section 220 documents in communications with other stockholders in a legitimate proxy campaign. *Disney*, *supra* note 16, slip op. at 1. Although Mr. Disney did not win at the ballot box outright, his campaign was ultimately successful when Disney CEO Michael Eisner stepped down in favor of Bob Iger.

when the parties request a court to craft an initial confidentiality order than when a stockholder later requests a court to modify a presumably reasonable existing confidentiality order. As the Court of Chancery itself has stated—statements of which we approve—although "a corporation need not show specific harm that would result from disclosure" before receiving confidentiality treatment in a Section 220 case,[21] "one cannot conclude reflexively that the need [for confidentiality] is readily apparent."[22]

### B. The standards for placing confidentiality restrictions are not the same as those for lifting existing restrictions

The Court of Chancery also went too far when it said that Tiger needed to "suggest[] the existence of exigent circumstances" in order to receive anything less than indefinite confidentiality.[23] First, given that there is no presumption of confidentiality at all, then, *a fortiori*, there is certainly no presumption of indefinite confidentiality as the Court of Chancery suggests. Second, simply because a party has not shown circumstances justifying modification of a judgment does not indicate that judgment would properly be entered against it in the first instance.

Simply put, an indefinite period of confidentiality protection should be the exception and not the rule. And while indefinite confidentiality may well be

---

[21] *Southpaw*, 2015 WL 915486, at *9; *Amalgamated Bank v. UICI*, 2005 WL 1377432, at *6.
[22] *Louisiana Mun. Police Employees' Ret. Sys.*, 2007 WL 4373116, at *2 n.7.
[23] *Master's Report*, *supra* note 2, at 7.

12

reasonable in a given case,[24] a party demanding Section 220 books and records need not show exigent circumstances for a court to grant something less than indefinite confidentiality.

## C. The Court of Chancery's confidentiality conditions were reasonable under the circumstances

We do not find, however, that the Court of Chancery's references to presumptions and exigent circumstances themselves warrant reversal. Although we might have decided the issue differently, especially when BAI offered a three-year confidentiality period, Tiger has not made an adequate showing of reversible error.

Tiger argues that an indefinite confidentiality order, in combination with the process to lift confidentiality, "could be used to unfairly burden a stockholder seeking to exercise its inspection rights." Though that is theoretically possible, Tiger has not shown that it is reasonably probable in this particular case. The hypothetical burden that Tiger posits consequent to the Court of Chancery's decision is that a stockholder might be required to seek court permission before offering the documents to an accountant or trust attorney for valuation purposes. But the confidentiality order entered by the Court of Chancery permits Tiger to share the documents with his accountants and tax preparers—subject to their agreement to

---

[24] For example, the confidentiality agreement in *Disney* appears to have been indefinite, although that agreement was the result of an out-of-court mutual agreement and not imposed upon the parties by court order.

maintain confidentiality—so that he might value his shares.[25]  Therefore, Tiger's supposed concerns are unfounded.  Accordingly, under our deferential standard of review, the Court of Chancery's decision does not warrant reversal.

**D. The Court of Chancery did not err by crediting BAI's concerns over Tiger's market participant status**

As mentioned, Tiger also appealed the Court of Chancery's alleged "fail[ure] to account for Tiger's status as a market participant" when issuing its order for indefinite confidentiality.  According to Tiger, the Court of Chancery "credited BAI's alleged concern that Tiger might improperly use the books and records over Tiger's concern that BAI might use an indefinitely confidentiality obligation to interfere with his . . . work in the . . . [apparel] market."[26]

Crediting one concern over another is well within the discretion of the Court of Chancery, and there is sufficient evidence to support the Court of Chancery's exercise of discretion.  We find no error here.

## IV.   CONCLUSION

For the foregoing reasons, the judgment of the Court of Chancery is affirmed.

---

[25] JA175–77, ¶¶ 7, 9 ("Stockholder shall not disclose, publish, or transmit any of the Confidential Information to any person, either directly or indirectly, other than (a) to his Advisors . . . For purposes of this Agreement, "Advisor" shall mean any accountant, tax preparer or bona fide consultant retained by Stockholder for the purposes of conducting the inspection, or providing advice or assistance to Stockholder relating to the inspection demanded by Stockholder under 8 *Del. C.* § 220.").
[26] Opening Br. 30.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

ROY E. DISNEY, §
§ No. 380, 2004
Plaintiff Below, §
Appellant, §
§
v. § Court Below: Court of Chancery
§ of the State of Delaware in and
THE WALT DISNEY COMPANY, § for New Castle County
§ C.A. No. 234-N
Defendant Below, §
Appellee. §

Submitted: March 30, 2005
Decided: March 31, 2005

Before **HOLLAND**, **BERGER** and **RIDGELY**, Justices

O R D E R

This 31st day of March, 2005, upon consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Roy E. Disney appeals from a decision of the Court of Chancery denying his application to lift the confidentiality restrictions on certain documents he obtained in a successful books and records case brought under 8 *Del. C.* §220. Disney wants to use the documents to communicate with other stockholders as part of a campaign for better corporate governance at The Walt Disney Company. He contends that the documents in question are not confidential, and that, if the trial court undertook an appropriate balancing test, it would conclude that Disney's

interest in communicating with stockholders about those documents outweighs any Company confidentiality concerns.

2) The Company contends that the trial court did review each document and determined that they all should continue to be designated "confidential." Disney disagrees. Disney reads the trial court decision to be that any document designated "confidential" when produced under §220 must remain confidential unless the stockholder decides to sue the corporation, and the court decides to remove the confidentiality restrictions in the context of that subsequent litigation.[1]

3) After carefully reviewing the trial court's decision, we are unable to determine which of these two interpretations is correct. We are not unmindful of the trial court's statements that: i) "the documents at issue all relate to the private communications among or deliberations of the Company's board of directors," and ii) "[t]here is little doubt that those who participated in these communications had a reasonable expectation that they would remain private…." If those statements constitute findings of fact after reviewing the disputed documents, they still do not explain what, if any, balancing the trial court undertook in deciding that the Company's confidentiality interest outweighed Disney's stockholder communication interest.

---

[1] The trial court identified other "exigent circumstances" under which it would entertain "extraordinary applications" to lift the confidentiality designation. For present purposes, however, we need not address that point.

4) Because further explanation may resolve, or at least clarify, some of the issues presented, we conclude that the appropriate course is to remand this matter. On remand, the trial court should make specific findings as to whether the documents are confidential. If so, the court should address the potential benefits and potential harm from disclosing the documents for Disney's stated purposes, and reach a conclusion as to whether the confidentiality designation should be removed or reduced to allow for specified communications. To the extent that several documents can be considered together because of their similarities, the trial court need not make separate findings for each one.

5) Finally, if the trial court takes the position that no review of the disputed documents is appropriate because Disney may only seek a change of designation in the course of a subsequent substantive lawsuit, the court should so advise this Court. Nonetheless, we ask that the trial court undertake the analysis described above.

NOW, THEREFORE, IT IS ORDERED that this matter is REMANDED to the Court of Chancery for further action in accordance with this Order. Jurisdiction is retained.

BY THE COURT:

*/s/ Carolyn Berger*
Justice

A3